UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JONATHAN GOULD,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE & CO., AND CORPORATIONS 1-10,**<br><br>    **Defendants.** | Civ. No. 21-04663 (KM) (ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    Several years ago, JPMorgan Chase Bank ("Chase") transmitted to the police an investigative report (the "Carroll Report") alleging that Plaintiff Gould was stealing from his elderly mother. Gould was arrested for theft, but charges were quickly dropped and then expunged. Gould sued Chase for setting these events in motion. Now, Chase moves to dismiss. (DE 5.)[1] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.  BACKGROUND**

    Jonathan Gould was responsible for the care of his mother, Dr. Carrol S. Gould, before her death in July 2015. (Compl. ¶ 41.) Gould had a durable power of attorney from his mother that allowed him to help manage her finances, including accounts with Chase, and he was an authorized user of her

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry in this case

    Related Action DE = docket entry in *Jonathan Gould v. Detective Robert O'Neal, Sergeant John Campo, and Assistant Prosecutor Robert Grady*, 17-cv-00100.

    Compl. = Complaint (DE 1-1)

    Mot. = Chase's motion to dismiss (DE 5)

    Opp. = Gould's Brief in opposition to Chase's motion to dismiss (DE 10)

Chase credit cards. (*Id.* ¶ 9–12.) Gould's power of attorney was on file with the bank. (*Id.* ¶ 10.) Sometime before February 2015, Chase provided an investigatory report, drafted by Walter G. Carroll (the "Carroll Report"), to the Essex County Prosecutor's Office ("ECPO"). (*Id.* ¶ 29–30.) Based on the Carroll Report, the ECPO arrested Gould and charged him with second-degree theft by unlawful taking (theft exceeding $75,000) in violation of N.J.S.A. 2c:20-3(a). (*Id.* ¶ 33). Gould pleaded not guilty to that charge on February 26, 2015, and was released on the condition he have no contact with his mother. (*Id.* ¶ 35.) In early March 2015, a detective from the ECPO spoke with Dr. Gould, who stated that her son had full, authorized access to her accounts and had her permission for all of the transactions at issue. (*Id.* ¶ 38.) As a result, charges against Gould were dropped and were fully expunged in August 2015. (*Id.* ¶ 39, 43.)

In December 2016, Gould brought claims for false arrest and malicious prosecution against the police officers and prosecutor involved in his arrest. (DE 1-2.) That case (the "related action") is ongoing and a motion for summary judgment is currently pending.[2] In that case, Gould sought discovery from Chase, aiming to obtain copies of all communications Chase had with the ECPO regarding his case. Chase refused to turn over documents to Gould for more than a year, until Magistrate Judge James B. Clark granted Gould's motion to compel in September 2019. (DE 10-1; DE 10-2, Ex. B.) Fact witnesses in the related action were deposed in March and April 2020. (DE 10-1 ¶ 35.) Gould states that it was at this point, in Spring 2020, that he discovered Chase's responsibility for his arrest and the resulting emotional trauma. (Id. ¶ 37.)

Gould filed this case in the Superior Court of New Jersey, Law Division, Essex County, on February 4, 2021 (DE 1-2.) Gould brought claims of malicious prosecution, intentional infliction of emotional distress, and

---

[2] *Jonathan Gould v. Detective Robert O'Neal, Sergeant John Campo, and Assistant Prosecutor Robert Grady*, 17-cv-00100 (JMV/AME) (D.N.J.)

defamation against Chase.[3] Chase removed the case to this court. (DE 1.) Now, Chase moves to dismiss all of Gould's claims. (DE 5.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations, but it must assert "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III.   DISCUSSION

### a. Malicious Prosecution

Under New Jersey law, a malicious prosecution claim requires proof of four elements: "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Lind v. Schmid*, 67 N.J. 255, 262 (1975). "The plaintiff must establish each element. Upon failure to prove any one, the cause must fail." *Id.* In *Lind*, the court stated that the tort of malicious prosecution is necessary because *"*one who recklessly institutes criminal proceedings without any reasonable basis should be responsible for such irresponsible action." *Id.*

Here, Gould plausibly alleges that all four factors are present.

---

[3]   Gould initially brought a claim of abuse of process but has withdrawn it. (Opp. at 1.) The abuse of process count is thus dismissed with prejudice.

"Instituting" a criminal action means more than simply reporting a suspected crime to the police. "[T]here must be encouragement, participation in, and perhaps even pressure asserted on the charging authorities. There has to be something more than merely reporting the activity." *Johnson v. DeBiaso*, 2009 WL 1065994, at *4 (N.J. Super. Ct. App. Div. Apr. 22, 2009). *See also Epperson v. Wal-Mart Stores, Inc.*, 373 N.J. Super. 522, 531 (App. Div. 2004) (stating that instituting a criminal action requirement "may be met by proof that defendant took 'some active part in instigating or encouraging the prosecution'" (quoting Prosser and Keeton, *The Law of Torts* § 119 at 872 (5th ed., 1984)) (cleaned up).

Gould plausibly alleges that Chase did more than simply report a potential crime to the police. Not only did Chase transmit to the ECPO the Carroll Report, containing the results of Chase's own investigation; Chase also allegedly had numerous communications with the ECPO after transmitting the report. For over a year, Chase resisted turning those communications over to Gould in discovery in the related action (DE 10-2). It is not clear from the face of the pleadings in this action what those communications consisted of, but it is plausible that they could demonstrate that Chase "took some active part in instigating," and thus instituted, Gould's prosecution.

"It has long been the law of New Jersey that '[t]o warrant a submission of a case of malicious prosecution to the jury it must appear that the prosecution complained of was actuated by malice,' and that '[m]alice in the law is the intentional doing of a wrongful act without just cause or excuse.'" *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 395 (2009) (quoting *Kearney v. Mallon Suburban Motors,* 135 *N.J.L.* 457, 459 (E. & A. 1947) and *McFadden v. Lane,* 71 *N.J.L.* 624, 630 (E. & A. 1905)). The malice that a plaintiff must demonstrate "does not necessarily mean that the defendant was inspired by hatred, spite or ill will." *Epperson,* 373 N.J. Super. at 532. In addition, the second and third requirements are intertwined because "malice may be inferred

from want of probable cause." *Id.* (quoting *Hammill v. Mack Int'l Motor Truck Corp.*, 104 N.J.L. 551, 552 (E. & A. 1928)).

Gould has plausibly alleged that Chase acted with malice in transmitting the Carroll Report accusing him of theft to the police. Gould had his mother's power of attorney, as Chase was aware. Gould alleges that Chase told the ECPO that it had been unable to contact his mother—the account holder—to ascertain whether Gould was engaging in unauthorized transactions, but that this was false; in fact, Chase had never attempted to contact Dr. Gould. (Compl. ¶ 31.) Without taking that basic step, Chase then set in motion the series of events that led to Gould's arrest. It is plausible to infer malice from these allegations, which are sufficient to unlock the doors of discovery.

"In cases of criminal prosecutions, 'probable cause' means reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the accused is guilty of the offence with which he is charged." *Lind*, 67 N.J. at 263, (quoting *Lane v. Pennsylvania R.R. Co.*, 78 N.J.L. 672, 674 (E. & A. 1910)). The question the court must ask is "Was the state of facts such as to lead a person of ordinary prudence to believe on reasonable grounds the truth of the charge at the time it was made?" *Brunson*, 199 N.J. at 398 (quoting *Lind*, 67 N.J. at 263).

Gould plausibly alleges that Chase did not have probable cause to report him to the police, especially since the truth of the issue could easily have been ascertained by simply speaking to his mother, Chase's depositor. And indeed, once the police finally spoke to Dr. Gould, the case was dropped, and his arrest record was eventually fully expunged. A jury could conclude that an "ordinarily cautious [bank]" would not accuse a man of stealing from his mother without speaking to the mother first. In addition, if "the criminal matter was dismissed for insufficient evidence, the jury could infer there was no probable cause for the criminal prosecution." *Epperson*, 373 N.J. Super. at 532. Because the

5

charges against Gould were dismissed and his record expunged, a jury could make a similar inference here.

Finally, the proceeding was terminated in Gould's favor. All charges against him were dropped. (Compl. ¶ 39, 43.) Chase concedes this point. (Mot. at 10.)

It is of course possible that a jury could eventually find in favor of Chase on any of these elements. But at this stage I merely ask if, drawing reasonable inferences in favor of the plaintiff, the complaint is plausible on its face. I find that it is, and therefore deny Chase's motion to dismiss.

### b. Intentional Infliction of Emotional Distress

"[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988). A defendant can also be liable if he or she "acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Id.* (citing *Hume v. Bayer*, 178 N.J. Super. 310, 319 (Law. Div. 1981)). In New Jersey, the statute of limitations for intentional infliction of emotional distress is two years. N.J.S.A. 2A:14-2. Under New Jersey's "discovery rule," a cause of action does not accrue until "the injured party discovers, or by reason of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim." *Szczuvelek v. Harborside Healthcare Woods Edge*, 182 N.J. 275, 281 (2005).

Gould states that Chase's false report to the ECPO that he stole from his mother was outrageous, and alleges that it resulted in severe emotional distress. (Compl. ¶ 63–64.) Moreover, he alleges that Chase acted recklessly, "in deliberate disregard of a high-degree of probability of resulting emotional distress." (*Id.* ¶ 62.) Again, these allegations could support a plausible inference that Chase's actions were both outrageous and reckless. Severe distress is alleged, and the severity of that distress is largely a question for the finder of fact. *See Buckley*, 111 N.J. at 367.

The parties disagree about the date that Gould's claim accrued for purposes of the running of the statute of limitations. Chase initially asserted that it accrued in February 2015, when Gould was arrested. (Mot. at 14.) Later, Chase argued that Gould surely learned he had a cause of action (against Chase, at least) when he received the Carroll Report in discovery in November 2018. (DE 14 at 9.) Gould states that his emotional distress claim against Chase accrued when he learned that Chase had brought about the criminal charges. (DE 10-1 ¶ 37.) He claims that he "did not become aware of Chase Bank's defamatory misrepresentations about me until sometime in March 2020." (DE 10-1 ¶ 36.)

There is a distinct lack of clarity about when Gould's cause of action for intentional infliction of emotional distress accrued. What is more, the issue of whether Gould failed to exercise "reasonable diligence" by not reading the Carroll Report when he received it in discovery from ECPO in 2018—if that is what happened—has not been briefed by the parties. The statute of limitations is an affirmative defense, and the facts are not sufficiently clear at this point for me to dismiss Gould's intentional infliction of emotional distress claim as time-barred. The issue, though not suitable for resolution on a motion to dismiss, may be revisited on summary judgment.

### c. Defamation

New Jersey law requires all defamation claims to be brought within one year of publication. N.J.S.A. 2A:14-3 ("Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander.") "Publication" of defamatory matter is its "communication intentionally or by a negligent act to one other than the person defamed." Restatement (second) of Torts § 577(a); *30 River Ct. E. Urb. Renewal Co. v. Capograsso*, 383 N.J. Super. 470, 479 (App. Div. 2006); *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 206 (D.N.J. 2011). The Carroll Report was sent to the ECPO sometime before February 2015, and upon this publication Gould's action accrued. (Compl. ¶ 29–30.)

That Gould's defamation claim began to accrue well before he knew the Carroll Report existed may seem harsh.[4] New Jersey's discovery rule, however, does not extend the limitation period for defamatory falsehoods, even those contained in confidential documents. *Baran v. ASRC/MSE,* 815 Fed. Appx. 633, 637 (3d Cir. 2020). In *Nuwave Inv. Corp. v. Hyman Beck & Co.,* the New Jersey Supreme Court considered extending the discovery rule to defamation claims, but declared itself unable to do so:

> Plaintiffs argue that equity requires the statute of limitations for defamation actions to implicitly include a "discovery rule" in cases involving confidential publications. Although there is a strong argument that such flexibility might advance the cause of justice in certain constrained publications of defamatory information that must be assessed under the current statute of limitations, we consider ourselves bound by the plain language of the statute. See ibid. The statute's clear and unqualified language requires all libel claims to be made within one year of the date of the publication. That language cannot be reconciled with the exception proposed by plaintiffs. In declining to create a judicial discovery rule, we leave amendment of the statute to the Legislature, should that body deem it advisable to create some flexibility for late discovery of defamation conveyed in confidential documents.

221 N.J. 495, 500 (2015). Like the New Jersey Supreme Court, I am bound by the statute's rigid limitation period and cannot read in an exception. Gould was required to sue for defamation within a year of the publication. Gould brought this suit in February 2021, incontrovertibly more than a year after publication of the Carroll Report. Therefore, his defamation claim must be dismissed.

### d. Entire Controversy Doctrine

Chase argues that all of Gould's claims should be dismissed pursuant to New Jersey's "entire controversy doctrine." (Mot. at 15–21.)[5] In effect, Chase

---

[4]     The Carroll Report is dated May 22, 2014. (Related Action DE 99-3.) Gould's record was expunged on August 6, 2015. (Compl. ¶ 43.) At that point, his defamation claim had already been time barred for almost three months.

[5]     The entire controversy doctrine is a New Jersey-specific doctrine that bars later-filed claims which a party could have asserted in a previous case. *Bank Leumi USA v.*

8

argues that it should have been joined as a party in the related action, and that therefore Gould's claims against Chase in this case are barred. The New Jersey entire controversy doctrine, however, does not apply, for multiple reasons.

There is a fatal threshold problem with Chase's argument. In federal court, a judgment has the preclusive effect that the court rendering it would give. Here, any judgment in the related action (and there is not any such judgment yet), would be rendered by a coordinate federal district court. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *see also* Restatement (Second) of Judgments, § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."). Thus, it is the federal common law of *res judicata*, not the entire controversy doctrine, that would even potentially apply here.[6] Neither preclusion doctrine, however, applies, even on its own terms.

The New Jersey entire controversy doctrine has three essential requisites:

(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

---

*Kloss*, 233 A.3d 536, 540–41 (N.J. 2020); N.J. Ct. R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine"). In essence, the doctrine is a more robust form of claim preclusion, "preclud[ing] … all claims that a party could and should have joined in a prior case." *Kaul v. Christie*, 372 F. Supp. 3d 206, 238 (D.N.J. 2019), *appeal dismissed*, 2019 WL 4733531 (3d Cir. June 20, 2019). The doctrine bars a subsequent claim if it "arise[s] from related facts or the same transaction or series of transactions" that were the subject of the previous suit. *United States ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 352 (3d Cir. 2019).

[6] I omit discussion of the complexities that occur in certain cases of cross-jurisdictional *res judicata. See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001).

*McNeil v. Legislative Apportionment Comm'n of State*, 177 N.J. 364, 395 (2003) (quoting *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 412 (1991)). For present purposes, the requirements of federal claim preclusion are similar:

> A party seeking to invoke res judicata must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."

*Marmon Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (quoting *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010)).

Thus, the entire controversy doctrine and federal *res judicata* both bar a subsequent claim only when the prior action has gone to judgment on the merits (or been settled). *See Arena v. Borough of Jamesburg, Middlesex Cty.*, 309 N.J. Super. 106, 111 (App. Div. 1998) (citing *Kaselaan & D'Angelo Assocs., Inc. v. Soffian*, 290 N.J. Super. 293, 299 (App. Div. 1996); *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887–89 (3d Cir. 1997); *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 415 (1991)); *Taylor,* 553 U.S. at 891–92 (federal common law standard requires a prior final judgment); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ("rigorous application" of final judgment rule to prior federal court judgment). "Thus, the [entire controversy] doctrine does not apply to a second suit involving the same issues and parties instituted in one forum while the first suit is pending in another forum." *Kaselaan*, 290 N.J. Super. at 299 (citing *American Home Prods. Corp. v. Adriatic Ins. Co.*, 286 N.J. Super. 24, 33 (App. Div. 1995)). Likewise, federal *res judicata* does not take effect until there is a prior final judgment. *See United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) (finding that assertion of *res judicata* was timely, because "[r]es judicata could not have been pleaded at those [earlier] times, because, at the time the answers were filed, no final judgment had been rendered in either [prior] case.").

Here, there is no final judgment on the merits in the related action; indeed, at present, a summary judgment motion is pending. In that procedural posture, neither claim preclusion nor the entire controversy doctrine applies.[7]

The motion to dismiss on preclusion grounds, whether viewed as one under the entire controversy doctrine or federal *res judicata* standards, is therefore denied.

## IV.   CONCLUSION

For the reasons set forth above, Chase's motion to dismiss (DE 5) is GRANTED with regard to Gould's claims of abuse of process and defamation, and DENIED with regard to Gould's claims of malicious prosecution and intentional infliction of emotional distress. A separate order will issue.

Dated: September 21, 2021

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

[7]   As if the above-stated concerns were not sufficient, Chase is invalidly interpreting the entire controversy doctrine to require joinder of itself as a party in the related action. The entire controversy doctrine, since it was amended in 1998, relates only to the mandatory joinder of claims, not of parties. *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 242 (App. Div. 2002) (quoting Pressler, *Current N.J. Court Rules,* Comment 1 on *R.* 4:30A, (2002)).

Occasionally, state courts have dismissed cases under the entire controversy doctrine when there was only a pending case, not a judgment on the merits. In those cases, however, the court did so because it found that the plaintiff was trying to forum shop or otherwise manipulate the judicial system. *See, e.g., J-M Mfg. Co. v. Phillips & Cohen, LLP*, 443 N.J. Super. 447, 459–60 (App. Div. 2015). I find no evidence that Gould is manipulating the forum here; the related action was originally filed in federal court, and Chase, not Gould, is the party which removed this case to federal court.

11